IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-01541-NYW-MDB

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

    Plaintiff,

v.

THE ESTATE OF STEPHEN CALENDINE, D.D.S.,
WESLEY BURCH,
DELIA DONNELLY,
MYKEL DONNELLY, individually and on behalf of her minor child, K.D.,
MICHELLE ESTRADA,
THE ESTATE OF MARY JO NICHOLSON,
KAREN PETRUCCI,
LEON RENICKER,
LAURI ROBERTS,
KELLY SIEBER,
SALLY STASCHKE, and
CONTINENTAL CASUALTY COMPANY,

    Defendants.

## ORDER ON MOTIONS TO DISMISS

This matter is before the court on (1) the Motion to Dismiss Pursuant to C.R.C.P. [sic] 12(b)(6), [Doc. 50, filed November 18, 2021], and (2) the Motion to Dismiss Second Amended Complaint by Continental Casualty Company Pursuant to C.R.C.P. [sic] 12(b)(6), [Doc. 58, filed December 10, 2021] (collectively, the "Motions to Dismiss" or "Motions"), each filed by Defendants Wesley Burch; Delia Donnelly; Mykel Donnelly, individually and on behalf of her minor child, K.D.; Michelle Estrada; the Estate of Mary Jo Nicholson; Karen Petrucci; Leon

Renicker; Lauri Roberts; Kelly Sieber; and Sally Staschke (the "Claimant Defendants").[1] Upon review of the Motions and the related briefing, the court concludes that oral argument would not materially assist in the resolution of these matters. For the reasons set forth herein, the Motions to Dismiss are respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the operative Second Amended Complaint for Declaratory Judgment ("Second Amended Complaint"), [Doc. 45], Answer to Second Amended Complaint and First Amended Counter-Claim and Cross-Claim for Declaratory Judgment ("First Amended Counterclaim"), [Doc. 55], and the associated insurance policies, [Doc. 45-1; Doc. 55-1],[2] and are taken as true for the purposes of the instant Motions to Dismiss.[3]

This dispute arises out of professional insurance policies that Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Defendant Continental Casualty Company ("Continental Casualty" and collectively with National Union, the "Insurers") issued to

---

[1] As relevant here, Defendant Continental Casualty Company ("Continental Casualty") brings a declaratory judgment crossclaim against the Claimant Defendants. *See* [Doc. 55 at 13–27]. Plaintiff and Continental Casualty filed a joint motion for summary judgment, which remains pending. *See* [Doc. 79].

[2] Plaintiff attached its policy as an exhibit to the Second Amended Complaint, *see* [Doc. 45-1], and Continental Casualty attached its policy to its First Amended Counterclaim, *see* [Doc. 55-1]. In evaluating a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, courts may consider not only the challenged complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); Fed. R. Civ. P. 10(c). The policies are central to the pleadings, and no Party disputes the authenticity. The court takes judicial notice of the policies only to "show their contents, not to prove the truth of the matters asserted therein." *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[3] In resolving the Motions to Dismiss, the court assumes the truth of the allegations in National Union's Complaint and Continental Casualty's crossclaim, which are nearly identical except where noted. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The Parties' arguments in their briefs are also similar. *Compare* [Doc. 50] *with* [Doc. 58].

Stephen Calendine, D.D.S., a dentist in Colorado Springs, Colorado, and Dr. Calendine's handling of ten professional negligence lawsuits that the Claimant Defendants filed against him in El Paso County District Court. [Doc. 45 at ¶¶ 1-3; Doc. 55 at ¶¶ 1–3]. Dr. Calendine was a dentist at All Smiles Dental Group, located at 6110 Barnes Road, Colorado Springs, Colorado 80922, for fifteen (15) years prior to his termination and subsequent death. [Doc. 45 at ¶ 2; Doc. 55 at ¶ 2]. The National Union policy had effective dates of April 2, 2017 to April 2, 2018 and provided retroactive coverage under certain circumstances dating back to April 3, 1993. [Doc. 45 at ¶¶ 2, 24]. The Continental Casualty policy had effective dates of February 1, 2018 to September 4, 2018. [Doc. 55 at ¶ 2].

In December 2019 and January 2020, ten civil actions were filed against Dr. Calendine, alleging negligent care (the "Negligence Lawsuits"). [Doc. 45 at ¶ 3 n.1]. Dr. Calendine did not notify either Insurer of the Negligence Lawsuits or enter an appearance in them. [Doc. 45 ¶¶ 4, 38; Doc. 55 at ¶ 4]. As a result, ten of the Negligence Lawsuits are in default, and eight have had default judgments entered against Dr. Calendine. [Doc. 45 at ¶ 4; Doc. 55 at ¶ 4]. As of December 1, 2021, the monetary judgments amounted to $540,556.59. [Doc. 55 at ¶ 39].

On August 13, 2020, counsel for the Claimant Defendants in the underlying Negligence Lawsuits sent a letter to an insurance agent with Professional Insurers in South Dakota, notifying that company of the defaults. [Doc. 45 at ¶ 40; Doc. 55 at ¶ 40]. On August 17, 2020, Professional Insurers forwarded the letter to Continental Casualty. [Doc. 45 ¶ 40; Doc. 55 at ¶ 40]. Continental Casualty then contacted National Union about the Underlying Negligence Lawsuits on October 14, 2020. [Doc. 45 at ¶ 40]. After the Insurers learned of the lawsuits, National Union hired counsel for Defendant Estate of Stephen Calendine, D.D.S. (the "Estate") in an attempt to set aside the default judgments, but the default judgments remain. [Doc. 45 at ¶ 4; Doc. 55 at ¶ 4].

The Insurers' policies are similar. Each policy identifies itself as a "claims-made" policy. [Doc. 45 at ¶ 24; Doc. 45-1 at 9; Doc. 55 at ¶ 24; Doc. 55-1 at 3].[4] The National Union policy provides that it will "pay on behalf of the insured those sums that the insured becomes legally obligated to pay as 'damages' because of a 'dental incident,'" subject to some additional conditions. [Doc. 45 at ¶ 25; Doc. 45-1 at 9–10]. Continental Casualty agreed to pay "all amounts up to the limit of liability, which you become legally obligated to pay as a result of injury or damage. . . . The injury or damage must be caused by a dental incident . . . [which] must happen on or after the prior acts date and claim therefore must be first made before the end of the policy period stated on the Declarations of this policy." [Doc. 55 at ¶ 25; Doc. 55-1 at 12 (emphases omitted)].

The National Union policy contains the following declaration: "claims made coverage is limited to liability for claims first made against an insured and reported in writing to us during the policy period or any extended reporting period, if applicable." [Doc. 45 at ¶ 27; Doc. 45-1 at 2 (emphasis and capitals omitted)]. The policy also contains certain conditions:

A. Duties in the Event of a "Dental Incident," "Claim," or "Suit"

1. If during the "policy period," the first Named Insured shall become aware of any "dental incident" which may reasonably be expected to give rise to a "claim" being made against any insured, the first Named Insured must notify us in writing as soon as practicable. To the extent possible, notice should include:

---

[4] A claims-made policy differs from an "occurrence policy." [Doc. 45 at ¶¶ 41–42]. In a claims-made policy, according to the Insurers, it is the timely making of the claim that is the "event and peril being insured," [*id.* at ¶ 41; Doc. 55 at ¶ 41], while an occurrence policy insures against a particular occurrence, and coverage attaches once the occurrence occurs, even though a claim may not be made until later, [Doc. 45 at ¶ 42; Doc. 55 at ¶ 42]. An "occurrence" policy "provides liability coverage only for injury or damage that occurs during the policy term, regardless of when the claim is actually made." *Craft v. Phila. Indem. Ins. Co.*, 343 P.3d 951, 957 (Colo. 2015) (quoting 3 Colo. Code Regs. § 702-5:5-1-8). A "claims-made" policy is a "policy that provides coverage only if a claim is made during the policy period or any applicable extended reporting period." *Id.* (quoting 3 Colo. Code Regs. § 702-5:5-1-8).

4

> a. How, when, and where the "dental incident" took place;
>
> b. The names and addresses of any injured persons and witnesses; and
>
> c. The nature and location of any injury or damage arising out of the "dental incident."
>
> * * *
>
> 2. If a "claim" or "suit" is brought against an insured arising out of a "dental incident," the first Named Insured must:
>
>    a. Immediately record the specifics of the "claim" or "suit" and the date received;
>
>    b. Provide us with written notice of the "claim" or "suit" as soon as practicable; and
>
>    c. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit."
>
> 3. The insured shall:
>
>    a. Cooperate with us in the investigation, settlement, or defense of the "claim" or "suit"; and
>
>    b. Assist us upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> The insured shall not admit to any liability, assume any financial obligation or pay out any money without our prior consent. If the insured does so, it will be at the insured's own expense.

[Doc. 45 at ¶ 28; Doc. 45-1 at 17–18 (emphasis omitted)]. The policy is entirely void if "any material statement or representation made in the application is untrue." [Doc. 45 at ¶ 30; Doc. 45-1 at 19].

The Continental Casualty policy requires an insured to comply with similar duties:

> B. Your Duty

5

> A claim for injury or damage is considered first made when you first receive notice of the claim. The notice must be given to us immediately and within the policy period or within 10 days after its expiration or termination. All claims arising out of the same dental incident will be considered as having been made at the time the first claim is made.
>
> * * *
>
> III.  Your Duties
>
> > If there is a claim or you reasonably think there will be, you must do the following:
> >
> > A. notify us and your insurance agent in writing as soon as possible;
> >
> > B. specify the names and addresses of the injured people and any witnesses. Provide us with information on the time, place and nature of the event;
> >
> > C. immediately forward all documents which you receive in connection with the claim to us;
> >
> > D. fully cooperate with us or our designee in the making of settlements, the conduct of suits or other proceedings, enforcing any right of contribution or indemnity against another who may be liable to you because of injury or damage. You shall attend hearings and trials, assist in securing and giving evidence, and obtaining the attendance of witnesses; and
> >
> > E. refuse, except at your own cost to voluntarily make any payment, assume any obligation or incur any expense other than reasonable medical expenses incurred at the time of the event.

[Doc. 55 at ¶¶ 27–28; Doc. 55-1 at 18–19 (emphasis omitted)].

After the Insurers' policies expired, Dr. Calendine purchased "Supplemental Extended Reporting Period Endorsements" (the "ERPs") from the Insurers, which provided an extension of the time to report claims arising out of dental incidents that occurred during the policies' periods. [Doc. 45 at ¶ 31; Doc. 55 at ¶ 31]. The ERPs state that all terms, conditions, and exclusions in the underlying policies remained unchanged. [Doc. 45 at ¶ 32; Doc. 55 at ¶ 32].

The Insurers aver that because Dr. Calendine did not notify National Union or Continental

6

Casualty of the lawsuits, they are not obligated to provide policy benefits to the Estate. [Doc. 45 at ¶ 5; Doc. 55 at ¶ 5]. Dr. Calendine's obligation to "provide [National Union] with written notice of the 'claim' or 'suit' as soon as practicable" remained, [Doc. 45 at ¶ 32], and he still had to provide notice of a claim to Continental Casualty "as soon as possible," [Doc. 55 at ¶ 32]. The Insurers allege that Dr. Calendine's failure to provide them with the appropriate notice of the lawsuits against him by the Claimant Defendants prevented them from "(i) investiga[ing] the allegations made in the . . . [l]awsuits; (ii) hir[ing] counsel to defend Dr. Calendine against the lawsuits, meaning that no defaults would have occurred; (iii) develop[ing] expert testimony defending Dr. Calendine's treatment; (iv) engag[ing] in the discovery process; and (v) settl[ing] the lawsuits or tr[ying] them to verdict," [Doc. 45 at ¶ 43; Doc. 55 at ¶ 43], thereby prejudicing them.

As a result, each Insurer brings two declaratory judgment claims (1) that the Insurer is not obligated to defend Dr. Calendine under the policy and (2) that the Insurer is not obligated to indemnify Dr. Calendine under the policy. [Doc. 45 at ¶¶ 47–54; Doc. 55 at ¶¶ 46–53]. The Claimant Defendants move for dismissal of these claims. *See* [Doc. 50; Doc. 58]. The court addresses the Parties' arguments below.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th

7

Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the court need not accept conclusory allegations. *See Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## ANALYSIS

Because jurisdiction is based on diversity, the court applies Colorado law in resolving the instant Motions to Dismiss. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state."). When construing the terms of an insurance policy, Colorado courts apply traditional principles of contract

interpretation. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Courts are to give effect to the intent and reasonable expectations of the parties and to enforce the policy's plain language unless it is ambiguous. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). A "court should interpret a contract 'in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.'" *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)).

Whether a contract is ambiguous is a question of law. *Id.* Contract terms are ambiguous when they can be read to have more than one reasonable interpretation. *Hecla Min. Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991). In making the ambiguity determination, courts are to view the policy as a whole, using the generally accepted meaning of the words employed. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1060 (Colo. 2005).

I. **Claimant Defendants' Motion to Dismiss National Union's Claims**

The Claimant Defendants argue that National Union has not shown prejudice and therefore has not plausibly pled that it is entitled to relief. [Doc. 50 at 3]. More specifically, the Claimant Defendants argue, first, that the policy did not require "notice of a 'claim' to trigger the duty to defend or indemnify"; second, that National Union has failed to allege prejudice and is not entitled to a presumption of prejudice; and third, that the "only prejudice presumption not wholly precluded is liability." [*Id.* at 4–14]. In response, National Union argues, first, that Dr. Calendine breached five independent obligations in the policy; second, that coverage is properly denied due to these breaches without National Union needing to allege prejudice; and third, even if National Union were required to allege prejudice, it has done so. [Doc. 57 at 5–6].

9

A.     **Notice of Claim**

The Claimant Defendants' first argument depends on language from the National Union policy, which states, "this policy will cover only claims actually made against you, or dental incidents properly reported to us, while the policy remains in effect." *See* [Doc. 45-1 at 9 (capitals omitted)]. The Claimant Defendants argue that the clause "or dental incidents properly reported to us," with the disjunctive "or" and offset by commas, means that the policy covers two separate types of events occurring within the policy period: (1) "claims" made against a policyholder and (2) "dental incidents" reported to National Union. [Doc. 50 at 5].[5] The Claimant Defendants interpret this clause as requiring only dental incidents – not claims made against Dr. Calendine – to be reported to National Union. *See* [*id.* ("The condition 'properly reported to us' in the second clause does not act as a condition precedent to the coverage for 'claims actually made.'")].

Reading the contract as a whole, this court finds no ambiguity. The first page of the policy states, "claims made coverage is limited to liability for claims first made against an insured and <u>reported in writing to us during the policy period or any extended reporting period</u>, if applicable." [Doc. 45-1 at 2 (capitals omitted) (emphasis added)]. Under the heading "duties in the event of a 'dental incident,' 'claim,' or 'suit,'" the policy requires that, "[i]f a 'claim' or 'suit' is brought against an insured arising out of a 'dental incident', the First Named Insured must," among other things, "[i]mmediately record the specifics of the 'claim' or 'suit' and the date received"; "<u>[p]rovide [National Union] with written notice of the 'claim' or 'suit' as soon as practicable</u>"; "[i]mmediately send [National Union] copies of any demands, notices, summonses, or legal papers

---

[5] As the Claimant Defendants note, the policy defines "claim" as a "a 'suit' or demand made by or for the injured person for 'damages' to which this insurance applies." [Doc. 50 at 6 (quoting [Doc. 45-1 at 15])]. The policy defines "dental incident" as "any act, error or omission in the rendering of or failure to render 'professional services' by: [1.] [a]n insured; or [2.] [a]ny person for whose acts, errors or omissions you are held legally liable." [*Id.* (quoting [Doc. 45-1 at 16])].

10

received in connection with the 'claim' or 'suit'"; and "[c]ooperate with [National Union] in the investigation, settlement, or defense of the 'claim' or 'suit.'" [*Id.* (quoting [Doc. 45-1 at 17–18]) (emphasis added)].

When interpreting a contract, the court considers the policy as a whole, enforces the policy's plain language unless it is ambiguous, *see Hoang*, 149 P.3d at 801, and "harmonize[s] . . . all provisions so that none will be rendered meaningless." *Copper Mountain*, 208 P.3d at 697. Applying these principles, this court finds the National Union policy unambiguously requires the "First Named Insured" to provide written notice of a "claim" or "suit" to trigger coverage. *See Hoang*, 149 P.3d at 801.

### B.     Prejudice

The Claimant Defendants next argue that when an insurer is eventually notified of a suit prior to the suit's disposition, even after an unreasonable delay, the insurer must prove prejudice in order to avoid liability. [Doc. 50 at 8–10]. Therefore, for the five cases that had not reached verdict as of October 2020 when National Union received written notice from Continental Casualty of the lawsuits, the Claimant Defendants argue National Union has not alleged that it was prejudiced, and therefore, insofar as the causes of action arise from these five cases, they must be dismissed. [*Id.*]. The Claimant Defendants rely principally on *Friedland v. Travelers Indem. Co.*, 105 P.3d 639 (Colo. 2005). [*Id.* at 8–9]. National Union disagrees that it needs to allege prejudice, yet asserts that it has done so, and distinguishes *Friedland*. *See* [Doc. 57 at 8–12].

#### 1.     Must National Union Prove, and Plead, Prejudice?

In *Friedland*, the Colorado Supreme Court explained that "[m]ost insurance policies require the insured to provide an insurer with prompt notice of a claim" when the claim arises, or of a legal proceeding when the insured is served with process. 105 P.3d at 643. Most policies also

11

require an insured to cooperate with the insurer. *Id.* However, the court noted the growing trend in state courts to adopt a "notice-prejudice rule, whereby late notice does not result in loss of coverage benefits unless the insurer proves prejudice to its interests by a preponderance of the evidence." *Id.* The court adopted a two-step test for implementing the notice-prejudice rule: first, a court is to determine whether the insured's notice was timely and, second, whether the late notice prejudiced the insurer. *Id.* (citing *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 231 (Colo. 2001)).

The court in *Friedland* extended the notice-prejudice rule from *Clementi*, which was limited to uninsured or underinsured motorist ("UIM") insurance, to liability policies. *See id.* at 645–46. In doing so, the court partially overruled another case, *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 291 (Colo. 1981), but only "to the extent [*Marez*] applies to late-notice liability cases." *Friedland*, 105 P.3d at 647. In *Marez*, "the insurer received absolutely no written or verbal notice of claim from the insured, and the insurer brought the declaratory judgment action to disavow any obligation to provide coverage under those circumstances." *Friedland*, 105 P.3d at 645. The court concluded that "the failure of [the insureds] to comply with the notice of accident and suit conditions, as a matter of law, constituted a material breach of the contract of insurance, relieving [the insurer] of its duty to defend the insureds and to indemnify them[.]" *Marez*, 638 P.2d at 289.

In extending *Clementi* to liability policies, not just UIM policies, and "expressly overrul[ing] *Marez* to the extent it applies to a late-notice liability case," *Friedland*, 105 P.3d at 647, the Colorado Supreme Court "decline[d] to adopt a rule that treats notice after settlement as no notice" and observed that "the insurer in *Marez* never received notice directly from the insured, whereas the insurer received notice from the insured in [*Friedland*]." Although the court characterized its decision as "leav[ing] little, if any, vitality to *Marez*," the court believed that

12

"disputes will likely arise only in the context of late notice by an insured." *Id.* Thus, *Marez* continues to provide the rule for cases where, as here, the insured never notified his insurer and does not require a showing of prejudice.

*United Specialty Insurance Company v. Hill Park Associates, LP*, No. 16-cv-02076-KHR, 2018 WL 1449529 (D. Colo. Jan. 31, 2018), as cited by National Union, is an analogous case. *See* [Doc. 57 at 10–11]. In *Hill Park*, the insureds were sued for defective workmanship. 2018 WL 1449529, at *1. As in this case, the state court granted default judgment against the insureds for failure to answer and ordered the insureds to pay damages. *Id.* The insureds never notified the insurer of the lawsuit or judgment. *Id.* Like the policy in this case required, the insureds had a duty to notify the insurer of the claim or suit and to cooperate with the insurer. *Id.* at *3. The insurer relied on *Marez* and the insureds relied on *Friedland*, just as in this case. *Id.* at *3–4. The court applied the "the narrow holding of *Marez*." *Id.* at *5. In the Second Amended Complaint, National Union has plausibly alleged that Dr. Calendine breached the policy by failing to provide any notice to it, as opposed to simply providing late notice. *See, e.g.*, [Doc. 45 at ¶ 40]. Accepting this allegation as true, National Union need not prove, and in turn plead, prejudice for the five cases that had not reached default judgment as of October 2020.[6]

---

[6] Moreover, even if this court assumed that the notice through Continental Casualty in October 2020 was sufficient to trigger Friedland's notice-prejudice rule to require National Union to prove and plead prejudice, this court concludes that it has met its burden at the motion to dismiss stage. The Claimant Defendants forward three different arguments, and this court is not persuaded by any of them. First, they argue that the Second Amended Complaint "merely concludes prejudice . . . without providing any facts that it could have obtained a materially better outcome than entry of default against the Estate." [Doc. 50 at 9]. But National Union does not merely conclude that it has been prejudiced. Instead, it avers that

> [a]ssuming *in arguendo* that National Union must demonstrate prejudice (it does not), Dr. Calendine's failure to notify it of the Dental Negligence Lawsuits severely prejudiced National Union's ability to protect its financial interests and defend against the several lawsuits brought against its insured. Specifically, had Dr.

13

### 2.  Application of Issue or Claim Preclusion

Finally, although not entirely clear, the Claimant Defendants' final argument appears to be that National Union is precluded, based on the application of claim or issue preclusion, from proving prejudice, or perhaps pursuing this action at all. [Doc. 50 at 10–14]. This court respectfully is not persuaded. Claim preclusion provides that a federal court must give a state-court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. The preclusive effect of the state-court judgment is determined by Colorado law. *See Migra*, 465 U.S. at 81. Claim preclusion under Colorado law requires (1) finality, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity

---

> Calendine abided by his Policy obligations a provided timely notice of the Dental Negligence Lawsuits to his carriers, National Union could have (i) investigated the allegations made in the Dental Negligence Lawsuits; (ii) hired counsel to defend Dr. Calendine against the lawsuits, meaning that no defaults would have occurred; (iii) developed expert testimony defending Dr. Calendine's treatment; (iv) engaged in the discovery process; and (v) settled the lawsuits or tried them to verdict. Instead, the complaints filed in the Dental Negligence Lawsuits went unanswered and, as a direct result, Dr. Calendine's estate currently faces $529,878.14 in default judgments entered against it.

[Doc. 45 at ¶ 43]. Such pleading is sufficient to survive a motion to dismiss.

Second, the Claimant Defendants contend that National Union must not only allege facts to establish prejudice, but must have plausibly alleged that timely notice "would have resulted in judgment for the Estate." [Doc. 50 at 9–10]. This court does not read *Friedland* as requiring National Union to prove, and in turn plead, that the Estate would have prevailed in the underlying malpractice litigation. Instead, the *Friedland* court held that, in cases of notice after settlement or disposition, there is a presumption of prejudice to the insurer, which the insured can overcome by introducing evidence that, even if the insurer had received notice it "could not have obtained any materially better outcome than what [the insured] obtained without [the insurer's] assistance." *Friedland*, 105 P.3d at 648. The burden-shifting analysis is simply inapposite to the motion to dismiss phase, where National Union would enjoy the presumption of prejudice, and the Claimant Defendants provide no authority that National Union would have to essentially anticipate their forthcoming evidence and plead facts in the Second Amended Complaint to overcome the presumption.

14

between parties to the actions. *See Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005).

Issue preclusion is broader than claim preclusion because issue preclusion "applies to claims for relief different from those litigated in the first action, but narrower in that it applies only to issues actually litigated." *S.O.V. v. People in ex rel. M.C.*, 914 P.2d 355, 359 (Colo. 1996). There are four elements to issue preclusion: (1) the prior proceeding was decided on a final judgment on the merits; (2) the issue in the current proceeding is identical to the issue actually adjudicated in a prior proceeding; (3) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom issue preclusion is asserted is a party or in privity with a party in the prior proceeding. *See Wolfe v. Sedalia Water & Sanitation Dist.*, 343 P.3d 16, 22 (Colo. 2015).

The Claimant Defendants argue that National Union was in privity with the Estate.[7] [Doc. 50 at 11–13]. National Union contends that claim and issue preclusion could not apply because it was not in privity to any party to the action and there is no identity of claims between this suit and the underlying malpractice litigation. [Doc. 57 at 14]. Courts in this district have held that "'[p]rivity between a party and a non-party requires both a substantial identity of interests and a

---

[7] The Claimant Defendants also provide arguments and facts about the motions filed in the state court cases. These facts do not appear in the Second Amended Complaint, and the court does not consider them because, on a motion to dismiss, the court "looks to the factual allegations made within the pleadings and not in other filings with the Court." *Stratton v. United Launch All., LLC*, No. 13-cv-01756-RBJ-KLM, 2014 WL 3644565, at *4 (D. Colo. July 23, 2014) (first citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."); and then *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1171 (D.N.M. 2012) ("In considering Rule 12(b)(6) motions, courts must look within the four corners of the complaint, accept all well-pleaded factual allegations as true, and determine if the plaintiff is plausibly entitled to relief.")). Although the court may consider attached exhibits and documents incorporated into the complaint by reference, *see Smith*, 561 F.3d at 1098, the complaint attached only the National Union policy, not the state-court documents.

working or functional relationship in which the interests of the non-party are represented.'" *Murphy-Sims v. Owners Ins. Co.*, No. 16-cv-00759-CMA-CBS, 2017 WL 2865679, at *5 (D. Colo. Mar. 17, 2017) (quoting *Goldsworthy v. Am. Family Mut. Ins. Co.*, 209 P.3d 1108, 1115 (Colo. App. 2008)). However, "[a]n insurer that defends its insured in a lawsuit against the insured is not necessarily in privity with the insured." *Id.* (citing *Shelter Mut. Ins. Co. v. Vaughn*, 300 P.3d 998, 1002 (Colo. App. 2013)). In *Vaughn*, the court explained that "no privity existed between Shelter and Vaughn in the underlying trial because their interests were not aligned. Vaughn had an interest in denying all liability, whether based on negligence or intentional conduct. Shelter had an interest in proving that if Vaughn was liable, it was for intentional acts because that would release Shelter of the duty to indemnify Vaughn." *Vaughn*, 300 P.3d at 1002.

The Colorado Supreme Court noted in *Foster v. Plock*, 394 P.3d 1119 (Colo. 2017), which the Claimant Defendants rely on, *see* [Doc. 50 at 11], that the identity of parties requirement has been relaxed in some jurisdictions where "indemnity relationships are implicated." *Foster*, 394 P.3d at 1125. *Foster* explained that this "'narrow exception' . . . makes the benefits of preclusion available to anyone who, if defeated in the second action, would be entitled to demand indemnification from the party who won the first action." *Id.* (quoting Charles Alan Wright & Arthur R. Miller, 18A Fed. Prac. & Proc. Juris. § 4463 (2d ed. 2017)). Given the record before it at this juncture, this court cannot conclude that the Claimant Defendants are entitled to dismissal. Moreover, the Claimant Defendants have not shown that the claims and issues in this lawsuit are identical to the ones in the state-court lawsuits. Thus, the court does not conclude that National Union is precluded from showing prejudice, if necessary, based on issue or claim preclusion.

For these reasons, this court respectfully **DENIES** the Claimant Defendants' Motion to Dismiss National Union's Claims.

**II.       Claimant Defendants' Motion to Dismiss Continental Casualty's Claims**

The Claimant Defendants also move to dismiss Continental Casualty's crossclaims for similar reasons they sought to dismiss National Union's claims, namely, that Continental Casualty's crossclaim "fails entirely because no facts demonstrating prejudice have been pleaded." [Doc. 58 at 1–2].

First, the Claimant Defendants rely on *Friedland* for their argument that Continental Casualty had to "prove prejudice" because the insurer had late notice, rather than no notice, of the lawsuits. [*Id.* at 4]. The court rejected this argument in ruling on the Claimant Defendants' motion to dismiss National Union's Complaint and need not repeat its analysis here. In short, under *Craft v. Philadelphia Indemnity Insurance Company*, 343 P.3d 951 (Colo. 2015), the notice-prejudice rule does not apply because the Continental Casualty policy is a claims-made policy, not an occurrence policy, *see Craft*, 343 P.3d at 960–61 (notice-prejudice rule "cannot be read to govern date-certain notice requirements in claims-made policies"); and, even if the Continental Casualty policy were an occurrence policy, Continental Casualty did not just receive late notice, but rather received no notice. Moreover, *Friedland* did not completely overrule *Marez* in no-notice cases. *See Friedland*, 105 P.3d at 645–47 ("expressly overrul[ing] *Marez* to the extent it applies to a late-notice liability case," yet "declin[ing] to adopt a rule that treats notice after settlement as no notice"); *Hill Park*, 2018 WL 1449529, at *5 ("Under the narrow holding of *Marez*, [the insureds'] failure to comply with the notice and cooperation provisions constituted a material breach of the contract of insurance, relieving United of its duty to defend and indemnify them with respect to the underlying judgment against them.").

Second, the Claimant Defendants repeat the claim and issue preclusion arguments that the court rejected. *See* [Doc. 58 at 6–10]. The Claimant Defendants rely on motions filed in the state

17

court, which the court does not consider. *See Stratton*, 2014 WL 3644565, at *4 ("On a 12(b)(6) motion to dismiss, the Court looks to the factual allegations made within the pleadings and not in other filings with the Court."). They also argue that Continental Casualty was in privity with the Estate. *See* [Doc. 58 at 7–10]. However, the court noted that "[a]n insurer that defends its insured in a lawsuit against the insured is not necessarily in privity with the insured." *Murphy-Sims*, 2017 WL 2865679, at *5 (citing *Vaughn*, 300 P.3d at 1002). The Claimant Defendants also have not shown that the issues or claims in this case – namely, whether the Insurers have to defend or indemnify Dr. Calendine – are identical to the claims and issues decided in the state-court lawsuits. Because the court concludes that Continental Casualty's claims are plausibly alleged, the court respectfully **DENIES** the Claimant Defendants' Motion to Dismiss Continental Casualty's Cross-Claims.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) The Motion to Dismiss Pursuant to C.R.C.P. [sic] 12(b)(6) [Doc. 50] is **DENIED**; and

(2) The Motion to Dismiss Second Amended Complaint by Continental Casualty Company Pursuant to C.R.C.P. [sic] 12(b)(6) [Doc. 58] is **DENIED**.

DATED: August 17, 2022

BY THE COURT:

_____
Nina Y. Wang
United States District Judge