**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 21-cv-01541-NYW-MDB

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

      Plaintiff,

v.

THE ESTATE OF STEPHEN CALENDINE, D.D.S.,
WESLEY BURCH,
DELIA DONNELLY,
MYKEL DONNELLY, individually and on behalf of her minor child, K.D.,
MICHELLE ESTRADA,
THE ESTATE OF MARY JO NICHOLSON,
KAREN PETRUCCI,
LEON RENICKER,
LAURI ROBERTS,
KELLY SIEBER,
SALLY STASCHKE, and
CONTINENTAL CASUALTY COMPANY,

      Defendants.

_____

CONTINENTAL CASUALTY COMPANY,

      Counter/Cross-Claim Plaintiff,

v.

THE ESTATE OF STEPHEN CALENDINE, D.D.S.,
WESLEY BURCH,
DELIA DONNELLY,
MYKEL DONNELLY, individually and on behalf of her minor child, K.D.,
MICHELLE ESTRADA,
THE ESTATE OF MARY JO NICHOLSON,
KAREN PETRUCCI,
LEON RENICKER,
LAURI ROBERTS,
KELLY SIEBER, and
SALLY STASCHKE,

Cross-Defendants, and

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Counter-claim Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on National Union Fire Insurance Company of Pittsburgh, PA and Continental Casualty Company's Joint Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment").  [Doc. 79].  Upon review of the Motion and the associated briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter.  For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED**.

## PROCEDURAL BACKGROUND

This case arises out of an insurance coverage dispute relating to ten state-court lawsuits alleging dental negligence on the part of Dr. Stephen Calendine (the "Underlying Lawsuits").  On June 8, 2021, Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") filed a Complaint for Declaratory Judgment against Wesley Burch, Delia Donnelly, Mykel Donnelly, Michelle Estrada, The Estate of Mary Jo Nicholson, Karen Petrucci, Leon Renicker, Lauri Roberts, Kelly Sieber, Sally Staschke (collectively, the "Claimant Defendants") and the Estate of Stephen Calendine, D.D.S (the "Estate"), seeking a declaratory judgment that it has no duty to defend nor indemnify Dr. Calendine against the Underlying Lawsuits.  [Doc. 1 at 1, 10–11].  National Union filed a First Amended Complaint on June 21, 2021, adding Continental Casualty Company ("Continental") as a Defendant.  [Doc. 18 at 1].  Continental answered the First Amended Complaint and asserted crossclaims for declaratory judgment against the Claimant

2

Defendants and the Estate, similarly seeking a declaratory judgment that it has no duty to defend or indemnify Dr. Calendine against the Underlying Lawsuits.  [Doc. 35 at 1, 23–24].  On November 17, 2021, National Union filed a Second Amended Complaint with leave of court.  *See* [Doc. 42; Doc. 45].  In response, Continental filed an Answer to Second Amended Complaint and First Amended Counter-claim and Cross-claim for Declaratory Judgment (the "Amended Answer").[1]  [Doc. 55].  The Claimant Defendants moved to dismiss National Union's claims and Continental's crossclaims (the "Motions to Dismiss").  [Doc. 50; Doc. 58].  On August 17, 2022, this Court denied the Claimant Defendants' two Motions to Dismiss.  [Doc. 97].[2]  The Claimant Defendants subsequently answered National Union's claims and Continental's crossclaims, raising no counterclaims or crossclaims in response.  [Doc. 99; Doc. 100].

National Union and Continental (collectively, the "Insurers") jointly filed the instant Motion for Summary Judgment on April 29, 2022, requesting that the Court "grant the motion for summary judgment and enter a declaratory judgment stating that National Union . . . and Continental . . . have no obligation to defend, indemnify, or otherwise provide coverage to the Estate . . . as it concerns the subject litigation brought by [the Claimant Defendants]."  [Doc. 79 at 19].  The Claimant Defendants responded in opposition, *see* [Doc. 93], and the Insurers have since replied.  [Doc. 96].  The matter is thus ripe for disposition.

---

[1] Continental does not name National Union as a counter-defendant in the caption of its Answer. *See* [Doc. 55 at 1], but represents that it intends to assert a counterclaim for declaratory judgment against National Union.  [*Id.* at 13].  The Court thus construes the Amended Answer as asserting a counterclaim against National Union, noting that National Union did the same.  *See* [Doc. 59 (National Union's answer to counterclaim)].

[2] This case was reassigned to this District Judge on August 4, 2022.  [Doc. 94].

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and are undisputed unless otherwise noted.[3]

1.      National Union issued a professional liability insurance policy to Dr. Calendine (the "National Union Policy").  [Doc. 79 at ¶ 2; Doc. 93 at 7, ¶ 2;[4] Doc. 79-14].

2.      Continental issued a professional liability insurance policy to All Smiles Dental Group, PC ("All Smiles"), with Dr. Calendine named as an additional insured (the "Continental Policy").  [Doc. 79 at ¶ 10; Doc. 93 at 4, ¶ 1; Doc. 96 at 2; Doc. 79-17 at 11; Doc. 93-1 at 26, 28].

### I.      The National Union Policy

3.      The National Union Policy had effective dates of April 2, 2017 to April 2, 2018 "and a retroactive date of April 16, 1993."  [Doc. 79 at ¶ 2; Doc. 93 at 7, ¶ 2; Doc. 79-14 at 36]. After expiration of this Policy, Dr. Calendine purchased a Supplemental Extended Reporting Period ("ERP") Endorsement, which provided Dr. Calendine with an extended reporting period for claims arising out of dental incidents that occurred after the Retroactive Date but before the end of the Policy Period.  [Doc. 79 at ¶ 8; Doc. 93 at 8, ¶ 8; Doc. 79-13 at ¶ 10].

4.      The National Union Policy contains a declaration stating that "claims made coverage is limited to liability for claims first made against an insured and reported in writing to

---

[3] The Court notes that at the time of the filing of the Claimant Defendants' Response to the Motion for Summary Judgment, the Honorable Philip A. Brimmer was the presiding judge.  Chief Judge Brimmer's Civil Practice Standard requires that "[a]ll summary judgment exhibits shall be labeled in the CM-ECF system both by exhibit number or letter and by name, e.g., Exhibit 1- Smith Affidavit."  Chief Judge Philip A. Brimmer, Practice Standards (Civil cases), Section III.F.3.b.viii. The Response does not conform to this convention, *see* [Doc. 93], making it more difficult and time-consuming for the Court to consider the evidence offered by the Claimant Defendants.

[4] The Claimant Defendants' Response contains both a "Summary of Relevant Undisputed Facts" and "Response to Movants' Statement of Undisputed Material Facts," which contain duplicative paragraph numbers.  [Doc. 93 at 3, 7].  For purposes of clarity, the Court references the Claimant Defendants' assertions by both paragraph and page number.

us during the Policy period or any extended reporting period, if applicable." [Doc. 79 at ¶ 4; Doc. 93 at 8, ¶ 4; Doc. 79-14 at 2 (capitals omitted)].

5.      The National Union Policy also states: "This Policy will cover only claims actually made against you, or dental incidents properly reported to us, while the Policy remains in effect." [Doc. 93 at 5, ¶ 8; Doc. 96 at ¶ 8; Doc. 79-14 at 9 (capitals omitted)].[5]

6.      "Claim" is defined in the National Union Policy as "a 'suit' or demand made by or for the injured person for 'damages' to which this insurance applies." [Doc. 79 at ¶ 6; Doc. 93 at 8, ¶ 6; Doc. 79-14 at 15].

7.      In addition, "suit" is defined in pertinent part as "a civil proceeding in which 'damages' to which this insurance applies are alleged." [Doc. 79 at ¶ 7; Doc. 93 at 8, ¶ 7; Doc. 79-14 at 17].

8.      The National Union Policy further provides "Duties In The Event Of A 'Dental Incident', 'Claim', Or 'Suit'," as follows:

> 1.  If during the "policy period", the first Named Insured shall become aware of any "dental incident" which may reasonably be expected to give rise to a "claim" being made against any insured, the first Named Insured must notify us in writing as soon as practicable. To the extent possible, notice should include:
>
>     a.  How, when, and where the "dental incident" took place;
>
>     b.  The names and addresses of any injured persons and witnesses; and
>
>     c.  The nature and location of any injury or damage arising out of the "dental incident".
>
> * * *
>
> 2.  If a "claim" or "suit" is brought against an insured arising out of a "dental incident", the first Named Insured must:

---

[5] While the Parties dispute the appropriate interpretation of this language, they do not disagree that this language appears in the National Union Policy. [Doc. 93 at 5, ¶ 8; Doc. 96 at ¶ 8].

     a.   Immediately record the specifics of the "claim" or "suit" and the date received;

     b.   Provide us with written notice of the "claim" or "suit" as soon as practicable; and

     c.   Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "claim" or "suit".

[Doc. 79 at ¶ 5; Doc. 93 at 8, ¶ 5; Doc. 79-14 at 17–18].

**II.    The Continental Policy**

9.    The Continental Policy was effective from February 1, 2018 through September 4, 2018.  [Doc. 79 at ¶ 10; Doc. 93 at 8, ¶ 10; Doc. 79-16 at ¶ 4].  An ERP Endorsement was added effective September 4, 2018, providing Dr. Calendine an extended period of time "for the reporting of claims first made against you and immediately reported in writing to us."  [Doc. 79 at ¶ 15; Doc. 93 at 8, ¶ 15; Doc. 79-17 at 34].

10.    The Continental Policy provides coverage against "injury or damage . . . caused by a dental incident arising out of the supplying of or failure to supply professional services by you or anyone for whose professional acts or omissions you are legally responsible."  [Doc. 79 at ¶ 11; Doc. 93 at 8, ¶ 11; Doc. 79-17 at 13].

11.    "Dental incident" is defined in the Continental Policy as "any act, error or omission in the supplying of or failure to supply professional services by you or by anyone for whom you are legally liable."  [Doc. 79 at ¶ 11; Doc. 93 at 8, ¶ 11; Doc. 79-17 at 17].

12.    The Continental Policy provides the following policyholder duties:

B.    Your Duty

A claim for injury or damage is considered first made when you first receive notice of the claim.  The notice must be given to us immediately and within the policy period or within 10 days after its expiration or termination.  All

claims arising out of the same dental incident will be considered as having been made at the time the first claim is made.

[Doc. 79 at ¶ 12; Doc. 93 at ¶ 12; Doc. 79-14 at 17].

13.     The Continental Policy further states that "[i]f there is a claim or you reasonably think there will be, you must . . . notify us and your insurance agent in writing as soon as possible." [Doc. 79 at ¶ 14; Doc. 93 at 8, ¶ 14; Doc. 79-17 at 20].

14.     "Claim" is defined in pertinent part as "the receipt of a demand for money or services, naming you and alleging a dental incident." [Doc. 79 at ¶ 13; Doc. 93 at 8, ¶ 13; Doc. 79-17 at 16].

## III.    The Underlying Lawsuits

15.     The Claimant Defendants are former patients of Dr. Calendine. [Doc. 79 at ¶ 16; Doc. 93 at 8, ¶ 16; Doc. 79-1 at ¶ 10].

16.     Between April 8, 2019 and May 1, 2019, six of the Claimant Defendants—Karen Petrucci, Kelly Sieber, Mykel Donnelly, Delia Donnelly, Mary Jo Nicholson, and Lauri Roberts—sent demand letters to Dr. Calendine, requesting contact from Dr. Calendine's legal representative. [Doc. 79 at ¶ 17, Doc. 93 at 9, ¶ 17; Doc. 79-5].

17.     Dr. Calendine did not notify the Insurers of these demand letters. [Doc. 79 at ¶ 18; Doc. 79-13 at ¶ 19; Doc. 79-16 at ¶ 17].[6]

_____

[6] The Claimant Defendants deny this assertion, stating: "Dr. Calendine mistakenly provided Notice of Claim to American Casualty Company of Reading, PA and American Casualty Company notified National Union of Dr. Calendine's request for coverage, who then denied it with a Notice of non-coverage.  [Continental] had notice based on the fact that All Smiles gave it notice of the dental incidents."  [Doc. 93 at 9, ¶ 18].  In support, the Claimant Defendants cite "CNA Dep. Pg. 32-33; 42-44." [*Id.*].  The Court finds this denial insufficient to create a genuine dispute of material fact for a  number of reasons.  First and foremost, the Claimant Defendants' assertion does not actually deny that Dr. Calendine *himself* did not give notice to the Insurers of the demand letters.  In fact, the Claimant Defendants appear to acknowledge this elsewhere in their briefing.  [*Id.* at 3].  Second, the Federal Rules provide that "[a] party asserting that a fact cannot be or is genuinely

18.     When notified of certain patient complaints,[7] Dr. Calendine contacted non-party American Casualty Company, "believing he had coverage with them."  [Doc. 93 at 4, ¶ 4; Doc. 96 at ¶ 4; Doc. 93-1 at 33:1–2, 16–21].  American Casualty Company notified National Union of Dr. Calendine's coverage request.  [Doc. 93 at 4, ¶ 5; Doc. 96 at 2 n.1; Doc. 93-1 at 43:21–44:4].

19.     Between December 20, 2019 and January 13, 2020, the Clamant Defendants filed ten separate lawsuits against Dr. Calendine alleging dental negligence.  [Doc. 79 at ¶ 19; Doc. 93 at 9, ¶ 19]; *see generally* [Doc. 79-4].

20.     Dr. Calendine was served in each of the lawsuits through personal service.  [Doc. 79 at ¶ 20; Doc. 93 at 9, ¶ 20]; *see generally* [Doc. 79-6].

21.     Dr. Calendine did not notify the Insurers of the Underlying Lawsuits.  [Doc. 79 at ¶ 21; Doc. 79-13 at ¶ 19; Doc. 79-16 at ¶ 17].[8]

22.     Between February and March 2020, after Dr. Calendine did not answer or otherwise respond in the Underlying Lawsuits, the Claimant Defendants each sought entry of default and default judgment against Dr. Calendine.  [Doc. 79 at ¶ 23; Doc. 93 at 9, ¶ 23]; *see generally* [Doc. 79-7].

---

disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).  The cited deposition testimony does not support the Claimant Defendants' assertion that Dr. Calendine provided Continental or National Union with notice of the demand letters.  Accordingly, the Court deems this fact undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

[7] The Claimant Defendants assert that Dr. Calendine was "notified of claims related to the subject Dental Incidents."  [Doc. 93 at 4, ¶ 4].  Insofar as the Claimant Defendants assert that the contact with American Casualty Company was prompted by claims forming the bases of the Underlying Lawsuits, this statement is not supported by the cited evidence.  *See* [Doc. 93-1 at 32–33, 42–44]; Fed. R. Civ. P. 56(c)(1)(A).

[8] The Claimant Defendants dispute the assertion that the Insurers did not have notice of the Underlying Lawsuits.  [Doc. 93 at 9, ¶ 21].  For the reasons set forth *infra* Section II, the Court finds this denial unsupported by the record evidence and thus deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

23.     The Claimant Defendants eventually secured default judgments in each of the lawsuits.  [Doc. 79 at ¶ 26; Doc. 93 at 10, ¶ 26]; *see generally* [Doc. 79-9].

24.     From May 2020 through January 2022, the Claimant Defendants appeared before the state court for hearings on damages and obtained default judgments.  [Doc. 79 at ¶ 26; Doc. 93 at 10, ¶ 26]; *see generally* [Doc. 79-9].

25.     Dr. Calendine did not notify the Insurers of the default hearings set in the Underlying Lawsuits.  [Doc. 79 at ¶ 23; Doc. 93 at 9, ¶ 23; Doc. 79-13 at ¶ 19].

26.     Dr. Calendine died by suicide on August 2, 2020.  [Doc. 79 at ¶ 27; Doc. 93 at 10, ¶ 27; Doc. 79-10].

27.     On August 13, 2020, the Claimant Defendants' counsel sent a letter to an insurance agent notifying the agent of the defaults.  The letter stated:  "To the best of our knowledge, Dr. Calendine has neither provided his insurer with notice of the claims nor provided his insurer any of the pleadings naming him as the Defendant."  [Doc. 79 at ¶¶ 28–29; Doc. 93 at 10, ¶¶ 28–29; Doc. 79-18 at 3–4].

28.     The insurance agent forwarded the Claimant Defendants' letter to Continental on August 17, 2020.  [Doc. 79 at ¶ 30; Doc. 93 at 10, ¶ 30; Doc. 79-18 at 1–2].

29.     Continental contacted National Union about the Underlying Lawsuits and defaults on October 14, 2020.  [Doc. 79 at ¶ 32; Doc. 93 at 11, ¶ 32; Doc. 79-13 at ¶ 14].[9]

30.     The Insurers jointly hired defense counsel to represent the Estate in the Underlying Lawsuits, reserving their rights to disclaim coverage, and filed motions to set aside the defaults

---

[9] The Parties dispute whether this contact was the first time National Union learned of the Underlying Lawsuits, but do not dispute the fact of the contact.  *See* [Doc. 79 at ¶ 32; Doc. 93 at 11, ¶ 32].

and/or default judgments.  [Doc. 79 at ¶¶ 34–35; Doc. 93 at 11, ¶¶ 34–35; Doc. 79-13 at ¶ 26; Doc. 79-16 at ¶ 22]; *see generally* [Doc. 79-11].

31.     The Claimant Defendants opposed the motions to set aside in state court, and the motions were all denied.  [Doc. 79 at ¶ 36; Doc. 93 at 11, ¶ 36]; *see generally* [Doc. 79-8; Doc. 79-12].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are

insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment).  In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."  *Adler*, 144 F.3d at 670.

## ANALYSIS

The Insurers move for summary judgment, seeking a declaration that neither Insurer owes a duty to defend or a duty to indemnify to Dr. Calendine against the Underlying Lawsuits.  *See generally* [Doc. 79].  Their Motion primarily asserts that Dr. Calendine failed to provide notice to either Insurer of the Claimant Defendants' claims, as required by both Policies, which constitutes a material breach of each Policy and obviates any duties to defend or indemnify.  [*Id.* at 12].  The Claimant Defendants disagree, contending that each Insurer had notice of the underlying claims. [Doc. 93 at 15].  Moreover, the Claimant Defendants argue that the National Union Policy does not require notice of claims as a condition precedent to coverage.  [*Id.* at 12].  Finally, they maintain that even if notice was not adequately provided to the Insurers, the "notice-prejudice rule" applies in this action and precludes the Insurers from avoiding their coverage obligations here.  [*Id.* at 16]. The Court addresses these arguments below, beginning with the legal question as to whether the National Union Policy required Dr. Calendine to provide notice of claims as a condition precedent to coverage.

I.      **Whether Notice is a Condition Precedent to Coverage in the National Union Policy**

The Insurers primarily assert that "by failing to provide the Insurers with any notice [of the Underlying Lawsuits], Dr. Calendine breached several conditions precedent to coverage." [Doc. 79 at 12]. In response, the Claimant Defendants first dispute—with respect to the National Union Policy only—that notice is a condition precedent to coverage.[10] [Doc. 93 at 12]. The Claimant Defendants focus on the following language: "This Policy will cover only claims actually made against you, or dental incidents properly reported to us, while the Policy remains in effect." [Doc. 79-14 at 9 (capitals omitted)]. They argue that, under a proper interpretation of the Policy, the phrase "properly reported to us" does not modify "claims actually made against you" and applies only to "dental incidents." [Doc. 93 at 12–13]. It follows, according to the Claimant Defendants, that the National Union Policy "covers two separate types of events[:] 'claims actually made against you' **OR** 'dental incidents properly reported to us.'" [*Id.* at 13 (emphasis in original)].

A.      **Colorado Contract Law Principles**

Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, [Doc. 45 at ¶ 22], the Court applies the substantive law, including the choice-of-law principles, of the forum state. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Colorado law provides that interpretation of an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). No Party engages in a choice-of-law analysis in their briefing or directs the Court to a choice-of-law provision in the subject Policies, but all briefing Parties raise arguments under Colorado law. *See* [Doc. 79 at 12; Doc. 93 at 16]. Accordingly, the

---

[10] The Claimant Defendants concede that "[t]he [Continental Policy] requires notice as a prerequisite to coverage without ambiguity." [Doc. 93 at 8, ¶ 14].

Court assumes that Colorado law applies here. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

In Colorado, "[a]n insurance policy's terms are construed according to principles of contract interpretation: a court seeks to give effect to the intent and reasonable expectations of the parties." *Auto-Owners Ins. Co. v. High Country Coatings, Inc.*, 388 F. Supp. 3d 1328, 1333 (D. Colo. 2019). Under this approach, "words should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990); *see also Saiz v. Charter Oak Fire Ins. Co.*, 299 F. App'x 836, 839–40 (10th Cir. 2008).

"In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1055 (D. Colo. 2013) (citing *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n*, 67 P.3d 12, 20 (Colo. 2003)). The determination of whether the terms of the contract are ambiguous is a question of law. *See id.* If the terms of the contract are not ambiguous, the construction of the contract is also a question of law. *See Devine v. Ladd Petroleum Corp.*, 743 F.2d 745, 748 (10th Cir. 1984).

## B.    Application

After briefing on the Motion for Summary Judgment was completed, this Court addressed, and rejected, the Claimant Defendants' argument in the context of their Motions to Dismiss. *See* [Doc. 97 at 10]. Specifically, the Court stated:

> Reading the contract as a whole, this court finds no ambiguity. The first page of the [National Union Policy] states, "claims made coverage is limited to liability for claims first made against an insured and <u>reported in writing to us during the policy period or any extended reporting period</u>, if applicable." Under the heading "duties

in the event of a 'dental incident,' 'claim,' or 'suit,'" the [National Union Policy] requires that, "[i]f a 'claim' or 'suit' is brought against an insured arising out of a 'dental incident', the First Named Insured must," among other things, "[i]mmediately record the specifics of the 'claim' or 'suit' and the date received"; "[p]rovide [National Union] with written notice of the 'claim' or 'suit' as soon as practicable"; "[i]mmediately send [National Union] copies of any demands, notices, summonses, or legal papers received in connection with the 'claim' or 'suit'"; and "[c]ooperate with [National Union] in the investigation, settlement, or defense of the 'claim' or 'suit.'"

When interpreting a contract, the court considers the policy as a whole, enforces the policy's plain language unless it is ambiguous, and "harmonize[s] . . . all provisions so that none will be rendered meaningless." Applying these principles, this court finds the National Union [P]olicy unambiguously requires the "First Named Insured" to provide written notice of a "claim" or "suit" to trigger coverage.

[*Id.* at 10–11 (citations omitted, emphasis in original, brackets altered)].

The Court reaches this same conclusion here. The Court concludes that the Claimant Defendants' argument "ascribe[s] more meaning than th[e] comma[s] may rightfully carry." *Washington Ins. Guar. Ass'n v. Guar. Nat. Ins. Co.*, 685 F. Supp. 1160, 1164 (W.D. Wash. 1988).[11] Stated differently, the Court is not persuaded that the reference to reporting requirements with respect to dental incidents in the quoted phrase negates the numerous other provisions in the National Union Policy requiring prompt notice of claims. *See, e.g.*, [Doc. 79-14 at 2, 17, 18]. Accepting the Claimant Defendants' argument would render these numerous provisions in the National Union Policy meaningless; the Court "may not adopt such a construction." *People ex rel. Rein v. Jacobs*, 465 P.3d 1, 12 (Colo. 2020). Reading the Policy as a whole, the Court

---

[11] The Court is respectfully unpersuaded by the Claimant Defendants' grammatical argument, wherein they assert that their interpretation "is the proper interpretation because a comma placed before the conjunction . . . creates two separate independent clauses" and the use of the comma "is only grammatically correct if it is introducing an independent clause." [Doc. 93 at 13 n.6]. But "or dental incidents properly reported to us" is not an independent clause, "as it does not contain a subject and a verb and could not stand alone as a complete sentence." *Washington Ins. Guar. Ass'n*, 685 F. Supp. at 1164.

concludes that notice of a claim is a condition precedent to coverage under the National Union Policy.

## II.     Whether the Insurers Had Notice of Claims or Dental Incidents

To avoid summary judgment, the Claimant Defendants further argue that both Insurers had notice of the dental incidents that form the bases of the Underlying Lawsuits.  [Doc. 93 at 15]. Their arguments run as follows: with respect to Continental, they assert that (1) a representative of Peak Dental "revealed [in his deposition] that All Smiles sought coverage from [Continental] regarding the dental incidents that form the factual basis of the suits filed against Dr. Calendine and [Continental] did not deny coverage"; (2) "[i]f All Smiles gave notice" of the dental incidents to Continental "when it was seeking coverage for claims arising out of those dental incidents, then [Continental] received notice of those same dental incidents for . . . Dr. Calendine prior to any judgments"; and (3) thus, Continental "had actual notice of the dental incidents and therefore, it cannot prevail on summary judgment" on this theory.  [*Id.* at 15–16].  As for National Union, the Claimant Defendants assert that National Union's Rule 30(b)(6) deposition "revealed [that National Union] knew about the dental incidents prior to the date alleged in the Complaint and Motion for Summary Judgment."  [*Id.* at 15].  In the alternative, they argue that National Union had notice because (1) National Union has acknowledged that it was notified by American Casualty Company that Dr. Calendine erroneously sought coverage from them; and therefore (2) "National Union received notice of the dental incidents involving Dr. Calendine" and "cannot prevail on summary judgment" on this basis.  [*Id.* at 15–16].  The Insurers argue in their Reply that there is no evidence in this case establishing that Dr. Calendine reported any of the Underlying Lawsuits or related dental incidents or claims to the Insurers.  [Doc. 96 at 6].

As an initial matter, this Court finds that the Claimant Defendants have not argued nor provided any evidence to create a genuine issue of material fact concerning whether Dr. Calendine ever directly provided notice to either Insurer of any of the ten lawsuits filed by the Claimant Defendants. *See generally* [Doc. 93]. Indeed, the Claimant Defendants appear to concede that Dr. Calendine did not directly provide notice of either the lawsuits or the dental incidents to either Insurer. [*Id.* at 11, ¶ 31 (discussing notice to Continental through All Smiles); *id.* at 11, ¶¶ 31–32 (discussing notice to National Union by American Casualty Company)]. Instead, in disputing the Insurers' proposed undisputed material fact that "Dr. Calendine failed to notify the Insurers about the Claimants' lawsuits," [Doc. 79 at ¶ 21], the Defendant Claimants argue that Continental had notice of dental incidents giving rise to the lawsuits, but not the lawsuits, through All Smiles, and that National Union had notice of the claims through American Casualty Company. [Doc. 93 at 9, ¶ 21]. The Court now turns to whether there is a genuine issue of material fact as to whether either Insurer had the required notice of claims or dental incidents to trigger insurance coverage.

A.       **The Continental Policy**

First, the Claimant Defendants assert that "the deposition of Peak Dental's representative revealed that All Smiles sought coverage from [Continental] regarding the dental incidents that form the factual basis of the suits filed against Dr. Calendine and CNA did not deny coverage." [Doc. 93 at 15]. The Court notes that the Claimant Defendants do not explain how Peak Dental, which is not mentioned in either of the operative pleadings, *see* [Doc. 45; Doc. 55], is connected to this case. *See generally* [Doc. 93]. Based on its own review of the exhibits filed in this case, the Court notes that at Peak Dental's Rule 30(b)(6) deposition, the deponent—AJ Peak—testified that he "managed" All Smiles. [Doc. 93-14 at 12:21–13:2]. Aside from ascertaining this limited context, the Court declines to comb through the voluminous case record to ascertain the exact

nature of the relationship between Peak Dental, All Smiles, and Dr. Calendine. *Abdelmeged v. Colvin*, No. 14-cv-01643-REB, 2015 WL 5047645, at *6 (D. Colo. Aug. 26, 2015) ("This court is neither required nor inclined to scour the record in search of evidence to support a party's arguments.").

In any event, the Claimant Defendants do not cite any record evidence demonstrating that Mr. Peak, during the Peak Dental Rule 30(b)(6) deposition, "revealed that All Smiles sought coverage from [Continental] regarding the dental incidents." *See* [Doc. 93 at 15].[12]  Instead, they cite only "Peak Dep. Exhibit 15. " [*Id.*].  This exhibit is a letter from a Continental representative addressed to Dr. Calendine, dated August 25, 2020, stating: "We have received documentation submitted under the policy issued to Stephen Calendine.  I will be your [Continental] claim professional to help you at each step of the process." [Doc. 93-17 at 1].  The letter further indicates that the underlying claimant is Claimant Defendant Wesley Burch.  [*Id.*].

Contrary to the Claimant Defendants' suggestion, this letter does not plainly demonstrate that All Smiles sought coverage for "the dental incidents that form the factual basis of" the

---

[12] Elsewhere in their Response, the Claimant Defendants state that "[t]he deposition of Peak Dental's representative revealed that All Smiles sought coverage from [Continental] regarding the dental incidents that form the factual basis of the suits filed against Dr. Calendine." [Doc. 93 at 10–11, ¶ 31].  In support of this assertion, they cite to 12 pages of Mr. Peak's deposition without directing the Court to specific lines of testimony, 11 exhibits without references to specific pages of those exhibits, and other unidentified documents such as "CNA Calendine 00082" and "CALENDINE. 89." [*Id.*].  Chief Judge Brimmer's Practice Standards, which were applicable at the time of the filing of the Response, require specific references to material in the record, and expressly state that "[g]eneral references to pleadings, depositions, or documents are insufficient if the document is over one page in length."  Chief Judge Philip A. Brimmer, Practice Standards (Civil cases), Section III.F.3.b.ii.  The Court declines to sift through these voluminous exhibits to ascertain whether they contain any support for the Claimant Defendants' assertion. *See Certain Underwriters At Lloyd's London v. Garmin Int'l, Inc.*, 781 F.3d 1226, 1231 (10th Cir. 2015) ("[T]he district court acted well within its discretion in setting aside the unwieldy mass of data that Mr. Bartle attempted to rely on without providing correct, specific references in accordance with the local rules.").

Underlying Lawsuits, as it—at best—relates to a single Claimant Defendant, Mr. Burch. Even as to Mr. Burch, the letter, which is addressed to Dr. Calendine, does not identify the factual basis for Mr. Burch's claim. [Doc. 93-17]. Nor did the deposition of Peak Dental elucidate the factual bases of Mr. Burch's claim; indeed, the corporate designee for the practice disclaimed any substantive knowledge about the letter. [Doc. 93-14 at 27:25–29:23]. Second, the Court highlights the Insurers' position that Continental did not receive notice of the Underlying Lawsuits until August 17, 2020. *See* [Doc. 79 at ¶ 31]. A letter dated August 25, 2020 wherein Continental stated it had "received documentation submitted under the policy issued to Stephen Calendine," with a notice date of August 20, 2020, *see* [Doc. 93-17 at 1], does not create a genuine dispute of fact as to whether Continental received notice *prior to that date*, as the Claimant Defendants contend. *See* [Doc. 93 at 10–11, ¶ 31].

Setting aside these deficiencies, in an abundance of caution, the Court notes that in their "Summary of Relevant Undisputed Facts," the Claimant Defendants state as follows:

15) The [Continental Policy] is in All Smiles['] Name. See, July 13, 2022 -- AJ Peak, 30(b)(6) ("Peak Dep."), Pgs. 10-11; see also Bates No. 89, Peak Dep. pg. 12.

16) Peak Dental ("Peak") was well aware of [Continental]'s Notice requirement for dental incidents. Peak Dep. Pg. 12, citing, CNA Calendine 00082.

17) On September 4, 2018, Peak sent a Letter of Termination to Calendine because, "out of 283 cases reviewed 82, which were itemized, were being inconsistent with any reasonable standard of care." Peak Dep., Pg. 12-13, citing Exhibit 2.

18) On October 16, 2018, Peak sent a Letter Demanding Indemnity for potential claims due to Dr. Calendine's Related Dental Incidents. Peak Dep. Pgs. 14, citing Exhibit 3.

. . .

20) Over a six (6) month period, Peak engaged the Seller of the subject practice relative to Indemnification. Peak Dep. Pgs. 21-23, citing Exhibit 7.

21) Mr. Peak considered these Dental Incidents to be reportable. Peak Dep. Pg. 24.

> 22) Peak necessarily, therefore, provided timely Notice of these Dental Incidents to [Continental] as [Continental] provided claim coverage in All Smiles name for Dr. Calendine's dental incidents pursuant to letter dated 2020.  Peak Dep. Pgs. 27-28, citing Exhibit 14; see also pgs. 41-42 -citing, Exhibit 15.

[Doc. 93 at 6–7, ¶¶ 15–22] [sic].[13]   These assertions lack the precision necessary to create a genuine issue of material fact.  In addition to not clearly directing the Court to evidence in the voluminous record supporting these assertions, it is unclear how the Claimant Defendants, through the preceding paragraphs, arrived at their conclusion that "Peak necessarily . . . provided timely Notice of these Dental Incidents to [Continental]."  [*Id.* at 7, ¶ 22].  Claimant Defendants do not (1) explain Peak Dental's association with or connection to All Smiles or Dr. Calendine; (2) argue that the "dental incidents" or "potential claims" referenced here are related to the Claimant Defendants or the Underlying Lawsuits, or provide evidence in support; (3) actually assert that Peak Dental provided notice of reported these incidents or claims to any insurance company, or provide evidence in support; or (4) identify *when* Peak Dental "necessarily" provided notice to Continental of the Claimant Defendants' claims, so as to support the Claimant Defendants' argument that Peak Dental provided such notice to Continental "prior to any judgments."  *See* [*id.* at 16].[14]   These deficiencies render the Court unable to discern Claimant Defendants' theory of notice and its specific factual bases, and the Court cannot construct such on their behalf.  *Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1145 (D. Colo. 2016).

---

[13] In reiterating the Claimant Defendants' purported Statements of Undisputed Fact, the Court does not hold that any of these statements are undisputed or material.  The Court includes these statements only to provide context to the Claimant Defendant's ultimate conclusion in [Doc. 93 at 7, ¶ 22].

[14] It is undisputed that some default judgments in the Underlying Lawsuits were entered as early as February 24, 2020 and May 6, 2020.  [Doc. 79 at ¶ 26].

Nevertheless, the Court has reviewed the evidence cited in support of the Claimant Defendants' conclusion that Peak Dental "necessarily" provided notice to Continental—pages 27, 28, 41, and 42 of Peak Dental's Rule 30(b)(6) deposition, as well as Exhibit 14, a subpoena issued to All Smiles in the Underlying Lawsuit of Kelly Sieber.[15]   The Claimant Defendants do not provide specific line citations identifying the portions of this deposition testimony that they believe support their conclusion and do not raise any argument explaining why these exhibits are supportive.   The Court concludes they are not.   In the cited testimony, Mr. Peak did not expressly or implicitly state that Peak Dental and/or All Smiles provided notice to Continental of any claims or dental incidents related to the Underlying Lawsuits.   Instead, he simply stated that he could not recall reporting the receipt of certain Department of Regulatory Agencies ("DORA") subpoenas to any insurance company, *see* [Doc. 93-14 at 27:4–25], and briefly discussed the August 25 letter as follows:

Q.  Okay.  Next, sir, I have [the August 25 letter].  Please – do you recognize this, sir?

A.  Yes.  I recognize it.

. . .

Q.   Was Dr. Calendine working for you, at that time?

A.  No.

Q.  So do you have any understanding[] as to why this was sent to you?

A.  I do not.

---

[15] The Claimant Defendants filed their voluminous exhibits in "Parts," not clearly labeling the attachments by exhibit number or clearly directing the Court to where in the record the exhibits can be located.  *See, e.g.*, [Doc. 93-14 (filed as "Exhibit Part 1 Peak Dental 30(b)(6) Deposition Transcript w Exhibits"); Doc. 93-15 (Part 2); Doc. 93-16 (Part 3); Doc. 93-17 (Part 4); Doc. 93-18 (Part 5); Doc. 93-19 (Part 6); Doc. 93-20 (Part 7)].  This Court recognizes the limitations of the ECF system.  But, as discussed above, this practice has significantly hindered the Court's ability to efficiently rule on the Motion for Summary Judgment.

> Q.  Okay.  You do say [sic] that it says – it appears someone submitted a claim, on behalf of All Smiles for Dr. Calendine, correct?
>
> . . .
>
> A.  I only read it's addressed to him.
>
> . . .
>
> Q.  All right.  And based on your experience, what do you understand this to be?
>
> . . .
>
> A.  Somebody is filing a claim against him.

[*Id.* at 28:1–19, 29:7].  The Claimant Defendants simply do not direct the Court to any deposition testimony from Mr. Peak supporting their theory.

Conversely, the Insurers have directed the Court to unrebutted evidence supporting their argument that Peak Dental and/or All Smiles *did not* provide notice to Continental.  Mr. Peak specifically testified that he did not remember notifying any insurance carrier about any claims regarding Dr. Calendine, and that if he had received notice, he would have reported the claims:

> Q.  Okay.  And so just as far as trying to summarize your testimony, then, it's fair that you did not provide any notice to any insurance carriers because, to your knowledge, no claims were brought against All Smiles, regarding Dr. Calendine; is that fair?
>
> . . .
>
> A.  As best I can – you know, I don't remember notifying insurance, as I mentioned before.  And, yes.  [T]hat's correct.  To my knowledge, we were never named.  And if we were named I would've known, and I would've notified our carrier.

[*Id.* at 38:21–39:11].  He further stated in his deposition that he did not recall "having any conversations with [All Smiles's] insurance agent[] regarding any litigation or claims against Dr. Calendine[.]"  [*Id.* at 38:2–6].

Finally, the Sieber subpoena issued to All Smiles—ordering All Smiles to produce all dental malpractice policies that were or had been held for Dr. Calendine—simply does not demonstrate that All Smiles provided notice of any claims or the Underlying Lawsuits to Continental, [Doc. 93-16 at 16–20], and the cited portions of Mr. Peak's deposition demonstrate only that Mr. Peak could not recall providing notice of the Sieber subpoena to Continental. [Doc. 93-14 at 27:24].

"To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones*, 366 F.3d at 875. In sum, the Claimant Defendants have come forward with no evidence demonstrating that Dr. Calendine provided notice to Continental of the Underlying Lawsuits so as to create a genuine dispute of fact as to whether Dr. Calendine complied with the condition precedent for coverage under the Continental Policy. For this reason, the Court concludes that there is no genuine dispute of fact that Dr. Calendine did not provide such requisite notice to Continental.

### B. The National Union Policy

As explained above, the Claimant Defendants assert that National Union's Rule 30(b)(6) deposition "revealed [that National Union] knew about the dental incidents prior to the date alleged in the Complaint and Motion for Summary Judgment." [Doc. 93 at 15]. The Insurers, in their Reply, suggest that the Claimant Defendants have misrepresented the evidence in the record, asserting that Claimant Defendants have "false[ly]" represented that National Union's corporate representative, Jane Shelton, stated in her deposition that National Union had notice of the Underlying Lawsuits. [Doc. 96 at 7].

Upon review of the deposition pages cited by the Claimant Defendants, the Court agrees that Ms. Shelton did not "reveal[]" that National Union knew about "the dental incidents prior to

the date alleged in the Complaint and Motion for Summary Judgment."  *See* [Doc. 93 at 15].  As

an initial matter, the Claimant Defendants do not explain to what "the dental incidents" refers, and

thus, the Court assumes that they contend that Ms. Shelton's deposition revealed that National

Union received notice of *each* Claimant Defendant's underlying claim or Lawsuit.  But this is not

the case.  Specifically, Ms. Shelton stated:

> Q.  Are you aware of whether or not National Union received any notice of any
> type involving any dental incidents of Dr. Calendine, <u>other than these lawsuits</u>?
>
> A.  Yes.
>
> . . .
>
> Q.  Yes.  Okay.  What incidents are you aware of, ma'am?  That – of notice?
>
> A.  I found evidence of five other matters.

[Doc. 93-3 at 23:21–24:10 (emphasis added)].  First, Ms. Shelton plainly testified that the evidence

of notice she uncovered did not involve the Underlying Lawsuits, and there is no indication in the

cited testimony that these "five other matters" are related to the Claimant Defendants' underlying

demands or claims.  In fact, the Claimant Defendants themselves acknowledge that only two of

these "five other matters" involved National Union as the insurer, and only one involved a

Claimant Defendant.  [Doc. 93 at 2].  Stated another way, this evidence, *at best*, could demonstrate

that National Union had notice of *one* Claimant Defendant's underlying claim—not that it had

notice of "the dental incidents prior to entry of any final judgment," as suggested by the Claimant

Defendants.  [*Id.* at 16].

In any event, the Claimant Defendants have cited insufficient evidence to support, and have

made no attempt to make an argument suggesting, that the one underlying claim of which National

Union purportedly had notice is somehow related to any of the Underlying Lawsuits.  *See generally*

[*id.*].  They do not identify which Claimant Defendant raised the complaint, cite to a copy of the

complaint, or tie that complaint to one of the Underlying Lawsuits. [*Id.*].   Nor do they identify any of the factual allegations, such as the date of the incident, or the alleged injury, that might permit a factfinder to conclude that National Union had notice of either the claim or the dental incident giving rise to an Underlying Lawsuit.

The Insurers, on the other hand, have demonstrated the opposite. *See* [Doc. 96 at 7]. Specifically, Ms. Shelton acknowledged in her deposition that National Union had notice of a DORA complaint filed by one of the Claimant Defendants, Mykel Donnelly, but also stated that the DORA complaint was not related to the Underlying Lawsuits:

> Q.  Okay.  When did they – when did you – when did National Union get prior notice of the dental incidents involving [the Claimant Defendants]?
>
> A.  Well, what National Union got notice of was a DORA complaint filed by [Mykel Donnelly], <u>but it was not the same information as in these suits at issue here</u>.
>
> Q.  Okay.  When did – when did – how many DORA complaints did National Union get notice of involving Dr. Calendine?
>
> A.  From the information I could find, there are two.
>
> Q.  Two?  That's it?  Just two?
>
> A.  Yes, sir.
>
> Q.  Okay.  And did it – did it receive any information from DORA involving any of the listed plaintiffs, that you're aware of?
>
> . . .
>
> A.  Other than Mykel Donnelly, no.

[Doc. 93-3 at 30:1–20 (emphasis added)].  Moreover, Ms. Shelton expressed in her deposition that National Union *did not* have notice of the Underlying Lawsuits or the related claims: "I cannot agree that National Union had any idea or did anything [between February and August 2020] because National Union did not yet have notice of any of these claims [in the Underlying

Lawsuits]." [*Id.* at 29:16–18]. The Claimant Defendants have directed the Court to no evidence disputing these statements.

In the alternative, the Claimant Defendants contend that "as National Union has now acknowledged it was notified by American Casualty Company that Dr. Calendine erroneously sought coverage from [American Casualty Company], then National Union received notice of the dental incidents involving Dr. Calendine." [Doc. 93 at 16]. The Claimant Defendants cite no evidence in support of this assertion, [*id.*], which does not contain a clear link between Dr. Calendine's erroneous request for coverage from American Casualty Company and National Union's purported "notice of the dental incidents involving Dr. Calendine." [*Id.*]. Elsewhere in their Response, they assert that

> When notified of claims related to the subject Dental Incidents, Dr. Calendine contacted American Casualty Company out of Reading, Pa., believing he had coverage with them. American Casualty Company notified National Union of Dr. Calendine's Notice and informed Dr. Calendine he had no coverage with them; Dr. Calendine mistakenly provided Notice of Claim to American Casualty Company of Reading, Pa. - with American Casualty Company notifying National Union of Dr. Calendine's request for coverage, who denied it with a Notice of non-coverage.

[*Id.* at 4, ¶¶ 4–5 (citations omitted)].

But in support of this factual recitation, the Claimant Defendants cite the deposition testimony of *Continental's* corporate representative, wherein she testified as follows:

> Q. Okay. And did Continental Casualty become aware of any dental incidents involving Dr. Calendine prior to notice of these lawsuits?
>
> A. Continental Casualty did not.
>
> Q. Who did?
>
> A. American – American Casualty was notified of one DORA complaint under a policy that they did not issue.
>
> Q. And do you know whether or not they sent a letter for indemnification or notified Continental Casualty or any other carrier when they received that notice?

A.  My understanding is that they engaged with National Union or a different carrier.

Q.  Okay.  And that would've been prior to notice of these suits, right?

A.  Yes.  I believe so.

[Doc. 93-1 at 43:16–44:7].  Again, this testimony could establish, *at most*, that there was *one* DORA complaint of which National Union had notice.  But this testimony does not explain the nature of the DORA complaint or whether it is related to the Underlying Lawsuits or the Claimant Defendants' initial demands, and the Claimant Defendants do not identify which Claimant Defendant, if any, filed the "one DORA complaint," or when American Casualty Company purportedly notified National Union of Dr. Calendine's request for coverage.  [Doc. 93].  It is not this Court's duty to review the voluminous record to find support for the Claimant Defendants' position.  *Abdelmeged*, 2015 WL 5047645, at *6.  In contrast, as explained above, the Insurers have directed the Court to evidence that the DORA complaint for which National Union received notice was *unrelated to* the Underlying Lawsuits.  [Doc. 93-3 at 30:1–8].  Thus, the Claimant Defendants have directed the Court to no record evidence demonstrating that National Union had notice with respect to the Underlying Lawsuits.

In sum, the Claimant Defendants have not established a genuine dispute of fact as to whether Dr. Calendine provided notice to National Union as required by the applicable Policy, and concludes that the Insurers have established that National Union did not receive such notice.  The Court now turns to the Parties' remaining arguments.

## III.    The Notice-Prejudice Rule

The Claimant Defendants argue that even if there was no notice, the "failure to provide notice in accordance with an insurance contract is not an absolute bar to recovery," advocating for

application of "notice-prejudice" rule.  [Doc. 93 at 16].  "Under the notice-prejudice rule, an insured who gives late notice of a claim to his or her insurer does not lose coverage benefits unless the insurer proves by a preponderance of the evidence that the late notice prejudiced its interests." *Craft v. Phila. Indem. Ins. Co.*, 343 P.3d 951, 952 (Colo. 2015).  The notice-prejudice rule is in contrast to the "traditional" approach used in Colorado insurance cases, wherein "an unexcused delay in giving notice relieves the insurer of its obligations under an insurance policy, regardless of whether the insurer was prejudiced by the delay." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 227 (Colo. 2001).  "This traditional approach is 'grounded upon a strict contractual interpretation of insurance policies under which delayed notice was viewed as constituting a breach of contract, making the issue of insurer prejudice immaterial.'" *Gregory v. Safeco Ins. Co. of Am.*, 514 P.3d 971, 974 (Colo. App. 2022) (quoting *Clementi*, 16 P.3d at 226).

The Insurers argue that the notice-prejudice rule does not apply to this case and thus, they need not show prejudice.  [Doc. 79 at 13].  In the alternative, however, they contend that if this Court determines that the rule does apply here, they are still entitled to summary judgment because they have established that they were prejudiced by the lack of notice.  [*Id.* at 17].

### A.      The Notice-Prejudice Rule in Colorado

Colorado courts have discussed the evolution of the notice-prejudice rule jurisprudence in detail, *see Craft*, 343 P.3d at 955; *Gregory*, 514 P.3d at 976, but the Court discusses the relevant history briefly for purposes of this Memorandum Opinion and Order.  The Colorado Supreme Court first considered the applicability of the notice-prejudice rule in an automobile insurance case in *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288 (Colo. 1981), *overruled in part by Friedland v. Travelers Indem. Co.*, 105 P.3d 639 (Colo. 2005).  In *Marez*, where an insured party had "totally failed to comply with the contract conditions" regarding notice, the court declined to apply the

notice-prejudice rule, holding instead that an unexcused delay in providing notice to an insurer relieves the insurer of its obligations under the policy, even if the insurer was not prejudiced by the delay. *Marez*, 638 P.2d at 288, 289. In dissent, Justice Quinn opined that the purpose of a prompt-notice requirement is to "prevent the insurer from being prejudiced in its investigation and defense of a claim." *Id.* at 292 (Quinn, J., dissenting). Justice Quinn suggested a framework where a presumption of prejudice arises upon an insured's failure to give notice of a claim, and the insured may rebut that presumption; if the insured does so, the insurer must demonstrate actual prejudice arising from the lack of notice. *Id.*

Two decades later, in *Clementi*, the Colorado Supreme Court granted certiorari to address "the status of the so-called notice-prejudice rule in Colorado." *Clementi*, 16 P.3d at 225. Noting a "modern trend" of applying the notice-prejudice rule in UIM cases, the court concluded that the policy considerations underlying the purpose of the notice-prejudice rule—the adhesive nature of insurance contracts, the objective of compensating tort victims, and the inequity of an insurance company receiving a windfall due to a technicality—warranted application of the rule in the UIM context. *Id.* at 229, 230.

Four years after *Clementi*, the Colorado Supreme Court concluded that the *Clementi* court's rationale in applying the notice-prejudice rule to UIM policies applied equally to liability policies. *Friedland*, 105 P.3d at 646. The *Friedland* court accordingly "overrule[d] *Marez* to the extent it applie[d] to liability policies involving late notice." *Id.* at 645. But the *Friedland* decision was arguably later narrowed by the Colorado Supreme Court in *Craft*, wherein the court held that the notice-prejudice rule *does not* apply to claims-made insurance policies with date-certain (as opposed to "prompt") notice requirements. *Craft*, 343 P.3d at 960. The court clarified that the *Friedland* court did not hold "that the notice-prejudice rule generally applies to all aspects of all

28

liability policies," *id.*, noting that "*Friedland* involved an occurrence policy" with "prompt notice provisions," and thus, "its holding, though worded broadly, cannot be read to govern date-certain notice requirements in claims-made policies." *Id.* at 960–61 (citations omitted). In sum, the Colorado Supreme Court has applied the notice-prejudice rule to two types of insurance policies: "underinsured motorist (UIM) and comprehensive general liability insurance policies." *Gregory*, 514 P.3d at 974.

### B.    Whether the Notice-Prejudice Rule Applies in this Case

The Insurers argue that the notice-prejudice rule is inapplicable here on the basis that the Colorado Supreme Court has adopted the notice-prejudice rule "only for two types of policies: UIM and occurrence-based comprehensive general liability coverage." [Doc. 79 at 13–14 (citing *Clementi*, 16 P.3d 223, and *Friedland*, 105 P.3d 639)]. The Claimant Defendants do not respond directly to this argument, instead suggesting that, in Colorado, "[w]hen an insurer receives unreasonably delayed notice of a suit but was notified [of the suit] prior to the suit's disposition, the insurer is required to prove prejudice because there is no presumption of prejudice." [Doc. 93 at 16 (citing *Friedland*, 105 P.3d at 648)].

The Claimant Defendants' argument concerns how courts apply the notice-prejudice rule and ignores the Court's preliminary inquiry: whether the notice-prejudice rule is even applicable in this case. It is only *after* an affirmative determination of the rule's applicability that a court must then determine the contours of how the rule is applied in a particular case. Specifically, in *Friedland*, *after* concluding that the notice-prejudice rule applied to the liability policy at issue in the case, the Colorado Supreme Court adopted a presumption of prejudice in favor of the insurer where an insured's late notice "occurs after the insured's settlement of the liability case." *Friedland*, 105 P.3d at 647. The presumption similarly arises when the insurer is given no notice

whatsoever. *Id.* at 647 n.3. After this presumption arises, the insured "must have an opportunity to rebut this presumption of prejudice based on the specific facts of the case[] before a trial court may bar the insured from receiving coverage benefits." *Id.* at 647. If the insured successfully presents evidence rebutting the presumption, "the presumption loses any probative force it may have," and the burden shifts to the insurer "to go forward with the evidence that actual prejudice existed." *Id.* The *Friedland* court contrasted this approach against *Clementi*, where "notice was given before settlement" and for this reason, "the analysis in *Clementi* assumed that an insurer would not be prejudiced if that insurer had an adequate opportunity to investigate the claim, present legitimate defenses to its insured's liability, and be involved in settlement negotiations." *Id.* at 648 (citing *Clementi*, 16 P.3d at 232). Thus, the *Friedland* court clarified that "in cases where an insurer has received unreasonably delayed notice of the suit but such notice came prior to the suit's disposition, there should be no presumption of prejudice and the insurer is required to prove prejudice." *Id.*

Focusing only on the timing of notice and its effect on the presumption of prejudice, the Claimant Defendants raise no clear argument explaining *why* the notice-prejudice rule applies in this case. *See* [Doc. 93].[16] And neither Party has cited case law wherein a Colorado court expressly addressed whether the rule applies to a malpractice claims-made liability policy with "prompt" notice requirements.[17] "When no decision of a state's highest court has addressed an issue of that

---

[16] Insofar as the Claimant Defendants' argument could be construed as an assertion that the Colorado Supreme Court "applies [the notice-prejudice rule] 'to a late-notice liability case,'" [Doc. 93 at 17 (citing *Friedland*, 105 P.3d at 643)], the Court is respectfully unpersuaded by this argument. The *Friedland* case does not mandate such broad application of the rule, as explained *supra* Section III.A.

[17] No Party clearly explains whether it believes the subject Policies include only "prompt" notice requirements or also "date-certain" notice requirements. The Court notes that both ERP Endorsements appear to extend the reporting period for an "unlimited" duration, [Doc. 79-14 at 43; Doc. 79-17 at 34], and neither side argues otherwise. Moreover, the Insurers do not argue that

state's law," a federal court "must predict how the State's highest court would rule." *Stuart v.*

*Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001).

The Court first notes that, this year, the Colorado Court of Appeals declined to extend

application of the notice-prejudice rule to homeowners' insurance policies. *See Gregory*, 514 P.3d

at 974.  The *Gregory* court noted that the Colorado Supreme Court "has been careful in applying

and extending the rule—and . . . in the associated weighing of public policy considerations,"

applying the notice-prejudice rule only to UIM and comprehensive general liability insurance

policies. *Id.* at 974.  The *Gregory* court further concluded that only the Colorado Supreme Court

may add the notice-prejudice rule to a new insurance framework. *Id.* at 979.  While federal courts

exercising diversity jurisdiction are not bound by the rulings of intermediate state appellate courts,

"[o]ut of comity and practical expediency, such decisions are normally followed without

comment," so long as the federal court does not conclude that the appellate court's decision is

contrary to the highest court's likely holding. *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d

1112, 1122 (D. Colo. 2017).  The Court is also mindful that state courts are in the best position to

recognize new rules of state law. *See Moore v. U.S./U.S. Dep't of Agric. Forest Serv.*, 864 F. Supp.

163, 165 (D. Colo. 1994) ("[F]ederal courts exercising diversity jurisdiction have traditionally

applied existing state law and have refrained from creating new state law where the state's highest

court has not done so.").

Next, the Court notes that *Marez* remains good law in cases where the insured failed to

provide *any* notice of claims to his insurance company. *See Friedland*, 105 P.3d at 643 (overruling

*Marez* "to the extent it applies to late-notice liability cases"); *id.* at 647 ("[W]e recognize that our

---

*Craft* is directly on point, which suggests that they do not believe their Policies include a date-certain notice requirement.  Accordingly, the Court proceeds under the impression that the Policies include only "prompt" notice requirements.

decision today leaves little, if any, vitality to *Marez* because disputes will likely arise only in the context of late notice by an insured."). In *United Specialty Insurance Co. v. Hill Park Associates, LP*, No. 16-cv-02076-KHR, 2018 WL 1449529 (D. Colo. Jan. 31, 2018), another court in this District applied "the narrow holding of *Marez*" to a case arising out of commercial general liability insurance policies on the basis that the insureds had not provided any notice to their insurer—and where the insurer had instead received notice from a third party—concluding that the insureds' "failure to comply with the notice and cooperation provisions constituted a material breach of the contract of insurance, relieving [the insurer] of its duty to defend and indemnify [the insureds] with respect to the underlying judgment against them." *Id.* at 5. *Hill Park Associates* supports the conclusion that where an insured fails to provide notice of a claim to his insurer, contrary to the express provisions in the insurance policy, *Marez* continues to control; here, this Court has concluded that there is no genuine dispute of fact that Dr. Calendine did not provide notice to either Insurer of the Underlying Lawsuits or the related claims, thus warranting application of the traditional rule.[18]

Finally, the Court finds the Colorado Supreme Court's decision in *Craft*, 343 P.3d 951, relevant to this analysis. In *Craft*, as mentioned above, the Colorado Supreme Court answered a certified question from the United States Court of Appeals for the Tenth Circuit: whether the notice-prejudice rule applies to date-certain notice requirements in claims-made liability policies. *Id.* at 953. In holding that the rule does not apply to this type of policy, the court reviewed the

---

[18] Insofar as the Claimant Defendants "disagree" that Dr. Calendine, specifically, was required to provide notice to the Insurers, they cite no legal authority demonstrating that notice from a third party is sufficient to fulfill the insured's duties under the contract. [Doc. 93 at 3]. The plain language of each Policy requires that the insured provide notice, *see, e.g.*, [Doc. 79-14 at 17; Doc. 79-17 at 20] and the *Hill Park Associates* court has ruled that notice from a third party is insufficient to invoke application of the notice-prejudice rule. *Hill Park Assocs.*, 2018 WL 1449529, at *5.

differences between claims-made policies and occurrence-based policies, as well as the distinctions between a "prompt" notice requirement and a "date-certain" notice requirement. *See id.* at 957–59. The scope of a date-certain notice requirement was the heart of the *Craft* court's decision. Specifically, it held that "[i]n a claims-made policy, the date-certain notice requirement defines the scope of coverage." *Id.* at 953. "Thus, to excuse late notice in violation of such a requirement would rewrite a fundamental term of the insurance contract," *id.*, and would "effectively create[] coverage where none previously existed." *Id.* at 961.

The Court notes that the Colorado Supreme Court in *Craft* expressly declined to consider whether the notice-prejudice rule would apply to a "prompt" notice requirement in a claims-made policy, *see id.* at 953, but observed that "excusing late notice and applying a prejudice requirement [would] make sense in the context of a prompt notice requirement." *Id.* at 958. The Court further recognizes that "the trend in Colorado, as in the nation, is toward imposing the notice-prejudice rule." *656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co*., 389 F. Supp. 3d 946, 956 (D. Colo. 2019). And indeed, the *Craft* court's statement may suggest the Colorado Supreme Court's willingness to apply the notice-prejudice rule in prompt-notice claims-made policies like the Policies at issue here. Nevertheless, the Court declines to hold that the notice-prejudice rule applies in this case. It is not this Court's role to overrule *Marez* and adopt a new rule of state law based on the dicta in *Craft*. *Gregory*, 514 P.3d at 979; *Hill Park Assocs*., 2018 WL 1449529, at *5 ("[I]t is not this court's role to craft new state precedent."). As the *656 Logan Street* court explained, to the extent that the Colorado Supreme Court has not made such a ruling, "there is no warrant for this Court to get ahead of the Colorado Supreme Court on this important issue." 389 F. Supp. 3d at 956.

For these reasons, the Court concludes that the Insurers are entitled to declaratory judgment in their favor that they owe no duty to defend or indemnify Dr. Calendine in the Underlying Lawsuits.[19]

## IV.   The Estate of Dr. Calendine

The Estate of Dr. Calendine is named as a Defendant in both National Union's Second Amended Complaint [Doc. 45] and Continental's Amended Answer [Doc. 55].  The Estate waived service of the National Union's First Amended Complaint on August 2, 2021, [Doc. 19-2], and the Amended Answer on January 11, 2022, [Doc. 63], but has failed to appear in this case.  The Estate thus did not join in the Claimant Defendants' Response to the Motion for Summary Judgment. *See* [Doc. 93 at 1].

Where a nonmoving party does not respond to a motion for summary judgment, a court may grant summary judgment so long as the moving party has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law.  *Trantham v. Super T. Transp., Inc.*, 311 F. Supp. 3d 1247, 1250 (D. Colo. 2018); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  The Estate's failure to appear in this case or respond to the Motion for Summary Judgment does not preclude the entry of judgment here, where the Court has concluded that no genuine issues of material fact exist and the Insurers are entitled to judgment as a matter of law.

---

[19] Having concluded that the notice-prejudice rule does not apply, this Court does not reach the Parties' arguments with respect to whether there is a genuine issue of material fact as to prejudice to the Insurers.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)   National Union Fire Insurance Company of Pittsburgh, PA and Continental Casualty Company's Joint Motion for Summary Judgment [Doc. 79] is **GRANTED**;

(2)   Judgment is **ENTERED** in favor of National Union Fire Insurance Company of Pittsburgh, PA on each of its two claims for declaratory judgment;

(3)   Judgment is **ENTERED** in favor of Continental Casualty Company on each of its two crossclaims for declaratory judgment;

(4)   National Union and Continental are entitled to their costs pursuant to D.C.COLO.LCivR 54.1; and

(5)   The Clerk of Court is **DIRECTED** to terminate this case accordingly.


DATED:  December 7, 2022                    BY THE COURT:

Nina Y. Wang
United States District Judge

35